

# THE ATTORNEY GENERAL
## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

June 5, 1967

This Opinion
Affirms Opinion
# C-90

Hon. J. R. Singleton
Executive Director
Texas Parks & Wildlife Dept.
Austin, Texas

Opinion No. M-84

Re: Authority of the Parks
and Wildlife Department
to regulate the taking
or disturbance of marl,
sand shells and other
materials within the wa-
ters of the State of
Texas.

Dear Mr. Singleton:

You have recently requested the opinion of this of-
fice regarding the authority of the Parks & Wildlife Depart-
ment to restrict disturbances in the bay and estuarine areas
lying along the coast of Texas. Your request reads, in part,
as follows:

"We desire the opinion of your office regarding
the authority of the Parks and Wildlife Depart-
ment to regulate the private development of
State-owned water bottoms.

"The destruction of bay nursery areas used by
fish and shellfish due to increased private
channel dredging, dredge fill operations and
spoil disposition are rendering useless these
former productive sites in Texas estuarine
areas. In addition, waterfowl feeding and
resting grounds are being destroyed by these
operations.

"Articles 4051, R.C.S. (Ch. 74, 36th Legislature,
2, 1919); 4052, R.C.S. (Ch. 74, 36th Legislature,
2, 1919); and 4053, as last amended (Ch. 248,
58th Legislature, R.S. 1963) authorize the Parks
and Wildlife Department to issue permits for the
sale, the taking away and disturbing of all marl,
sand or gravel.

"Article 976, Texas Penal Code, provides a
penalty for persons taking or carrying away
any marl, sand, shells or mudshell or gravel
under the Department's management, or disturbing

*- 378 -*

any of the marl, sand, shells or mudshell
or gravel or oyster beds  or fishing waters
or operate in or upon any of the shell places,
other than is necessary or incident to navi-
gation, or dredging under Federal or State
authority without a permit from the Parks and
Wildlife Department.

"The Parks and Wildlife Department has only
exercised its authority under these statutes
to issue permits for the sale of sand, shell
and gravel.

"Article 5415-e, V.C.S., provides for proce-
dures by which the School Land Board may lease
State-owned submerged lands to individuals.  The
Parks and Wildlife Department has representation
on the Submerged Lands Advisory Committee.

"In summary of an Attorney General's Opinion
issued July 3, 1957, No. WW-150 the following
is quoted:

'A permit from the Game and Fish Com-
mission to dredge shell on lands here-
tofore patented to the Nueces County
Navigation District is not a prere-
quisite to the removal of shell commer-
cially from said lands so long as such
removal is incidental to authorized
navigational purposes.'

"We have interpreted this as applicable to other
navigation districts in the State."

You then state:

"In view of the above-referenced statutes and
the limitations we have placed on our authority
by administrative interpretations and by agree-
ment of a majority of the Parks and Wildlife
Commissioners, it is deemed proper to request
the Attorney General of the State of Texas for
advice on these questions:

"(1)  Does the Parks and Wildlife Depart-
ment have authority to regulate or limit dis-
turbances of fish producing areas in natural
bottoms of bay and Gulf areas when the sale of

sand, shell or gravel is not involved, nor
where petroleum development by the General
Land Office is concerned?

"(2)  Does the Parks and Wildlife Depart-
ment have authority to regulate or limit dis-
turbances in submerged land areas leased by
the School Land Board to individuals?

"(3)  Does the Parks and Wildlife Depart-
ment have authority to limit the disturbances
of submerged State-owned land leased by the
General Land Office for Oil Development?

"(4)  What course of action is open to the
Parks and Wildlife Department to control the
use and disturbance of State-owned submerged
lands?"

By Acts 36th Leg., 2nd Called Session 1919, Chapter
74, Page 215 (codified as Article 4051, V.C.S.), the Legis-
lature placed all sand of commercial value and all of the
shells, mudshells or gravel of whatsoever kind that may be
in or upon any island, reef or bar, and in or upon the bot-
toms of any lake, bay, shallow water, rivers, creeks and
bayous and fish hatcheries and oyster beds within the terri-
tory therein defined, under the control, management and pro-
tection of the Game and Fish Commission.  The territory
defined included all the islands, reefs, bars, lakes and bays
within tidewater limits from the most interior point seaward
coextensive with the jurisdiction of this State.

By Acts 36th Leg., 2nd Called Session 1919, Chapter
74, Page 215 (codified as Article 4052, V.C.S.), the Legis-
lature invested the Game and Fish Commission with all power
and authority necessary to carry into effect the provisions
of the chapter and likewise gave it full charge and discretion
over all matters pertaining to the sale, taking, carrying away
or disturbing of sand or gravel of commercial value, and all
gravel, shells, mudshell and oyster beds.

By the aforementioned Act, Section 5 thereof (codified
as Article 4053, V.C.S.), anyone desiring to purchase gravel,
shells, or mudshell included in this chapter, or operate in
or upon any island, reef, bar, lake, river, creek or bayou
must apply for a permit to do so from the Game and Fish Com-
mission.

It should first be noted that the protection of the

natural resources of State-owned submerged lands has been placed under the jurisdiction of the Parks and Wildlife Department. Title 67, Vernon's Civil Statutes. Moreover, the tidal areas of Texas, to which your opinion request is directed, are placed under the "management, control and protection" of your department by virtue of Articles 4051 and 4052, supra, with explicit legislative injunction to protect the natural resources therein.

However, there are conflicting interests involved in the tidewater areas since these lands are valuable to the State of Texas, not only because they contain fish, shell and other marine resources, but they are valuable also for navigational purposes, for oil and gas production, and for commercial and industrial uses.

For example, Article 4051, Vernon's Civil Statutes, provides not only for the protection of marine life but empowers your department to sell commercially valuable marl, sand, gravel, shells and mudshells located in the tidal areas of the state if such sale will not endanger the breeding grounds of fish and shellfish. See Attorney General's Opinions WW-1487 (1962) and C-90 (1963). Moreover, these statutes place the protection of marine life in your hands regardless of whether the sales of commercially valuable materials are involved and give your department the right to control all disturbances in the tidal lands except where some use is made of these tidal lands as may be provided for by other statutes. Attorney General's Opinion WW-151.

In some areas, the value of the commercial and industrial use overrides the protection of marine life. As you note in your letter to us, a navigation district is authorized by the State to remove marl, shell, gravel and other materials and thereby disturb oyster beds and fish hatcheries without the permission of your department, if such removal and disturbance is incidental to an authorized navigational purpose. Attorney General's Opinion WW-150.

The School Land Board, by virtue of the provisions of Article 5415-e, Vernon's Civil Statutes, is authorized to lease the surface estate in State-owned islands and submerged lands for industrial purposes, including exploration and development of oil and gas under prior existing laws, subject to certain limitations and conditions. This Article also provides for the School Land Board to make comprehensive studies of submerged land management, and in a measure is supplemental to the power of the Parks and Wildlife Department to conserve and protect the natural resources of such lands. However,

this Act, specifically provides that:

> ". . . It is expressly provided, however,
> that it is not intended that this Act shall
> repeal or modify the provisions of Chapter 3,
> Title 67, Revised Civil Statutes of Texas, as
> amended, as it relates to the powers and duties
> of the Game and Fish Commission with respect
> to all matters pertaining to the sale, taking,
> carrying away, or disturbing of marl, sand or
> gravel of commercial value, and all gravel,
> shells, mudshell, and oyster beds and their
> protection from free use and unlawful disturb-
> ing or appropriation as provided in said Chapter
> 3; nor is it intended that this Act should cre-
> ate or establish any additional or supplemental
> requirements or procedures to those set forth
> in the said Chapter 3, Title 67, insofar as the
> matters therein involved are concerned. . ."

Where tidal lands are set aside for navigational pur-
poses or are leased for oil and gas production or other indus-
trial purposes, the use of the lands by the navigation dis-
trict or by the lessee must be consistent with the purpose
for which such areas are set aside or leased.  If the dis-
turbances of the State-owned water bottoms are not incidental
to and necessary for the carrying out of navigation, or for
the production of oil and gas, or for industrial purposes,
then disturbances of oyster and fish producing areas would be
within the authority of the Parks and Wildlife Department to
control  See the reasoning of Attorney General's Opinion WW-
150.  It was stated in Attorney General's Opinion C-90, supra,
that:

> "However, insofar as sand, gravel, marl,
> shell and mudshell might be removed and sold from
> State owned tidal or submerged lands under lease
> for oil and gas without disturbing or interfering
> with the development of the leased lands for oil
> and gas, the Game and Fish Commission is authorized
> to issue permits for the sale thereof."

In view of the foregoing and the holding and reasoning
in the cited Attorney General's Opinions, which we reaffirm,
it is our opinion that your first three questions should be
answered in the affirmative, subject to qualifications.  We
will not answer these questions categorically, but will make
one answer which will fully set out your authority in protect-
ing and conserving the natural resources in the bottom of the

submerged islands and waters.

The Parks and Wildlife Department has the authority and duty to manage, control and protect all the marl and sand of commercial value, and all the shells, mudshell, gravel, fish hatcheries and oyster beds within the territory defined in Article 4051, Vernon's Civil Statutes, as well as the additional powers and duties provided in Chapter 3 of Title 67, Vernon's Civil Statutes, except the marl, sand, shells, mudshell, gravel, fish hatcheries and oyster beds that are disturbed for an authorized navigational purpose, and such disturbance is incidental to and reasonably necessary in carrying out such navigation, or being disturbed by a lessee of the School Land Board in carrying out the purpose of the lease (whether for oil or gas production or other commercial or industrial use) and which disturbance of the marl, etc. is incidental to such purposes and reasonably necessary in carrying out such purposes.

In answer to your fourth question (what courses of action are open to you to control the use and disturbance of submerged lands when you have authority to protect the marine life in such areas), you have the duty and prerogative of investigating disturbances and their affect on fish and shell fish breeding grounds.  If the party responsible will not cease such disturbance, upon your request, you may then report the facts to the Attorney General who will decide if court action is warranted to limit the disturbance involved. In conjunction with this action, or as an alternative to it, you may wish to bring the activities causing the disturbance to the attention of the proper county or district attorney if a criminal offense seems to be involved.

## S U M M A R Y

The Parks and Wildlife Department has the authority and duty to manage, control and protect all the marl and sand of commercial value, and all the shells, mudshell, gravel, fish hatcheries and oyster beds within the territory defined in Article 4051, Vernon's Civil Statutes, as well as additional powers and duties provided in Chapter 3, of Title 67, Vernon's Civil Statutes, except the marl, sand, shells, mudshell, gravel, fish hatcheries and oyster beds that are disturbed for an authorized navigational purpose, and such disturbance is incidental to and reasonably necessary in carrying out such navigation,

or being disturbed by a lessee of the School Land Board in carrying out the purpose of the lease (whether for oil or gas production or other commercial or industrial use) and which disturbance of the marl, etc. is incidental to such purposes and reasonably necessary in carrying out such purposes.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Lonny F. Zwiener
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-Chairman
Houghton Brownlee
Kerns Taylor
Malcolm Quick
Niel Williams

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.